IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN P., a Minor, by and through his and natural guardians, CHRISTINE P. and ERIC P., et al., | : : : : | CIVIL ACTION |
| Plaintiffs | : : | |
| v. | : : | |
| SCHOOL DISTRICT OF PHILADELPHIA, | : : : | |
| Defendant | : | NO. 07-2903 |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                                                 March 18, 2008

  This matter arises out of a dispute between Ryan P. ("Ryan") and his parents Christine P. and Eric P. ("Parents") and the School District of Philadelphia (the "District") concerning the District's handling of Ryan's educational development.  Jurisdiction has been conferred upon this Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule of Civil Procedure 72.1.  (*See* Doc. No. 12.)

  Ryan was initially classified as Individuals with Disabilities Education Act ("IDEA") eligible in March 1998. (Doc. No. 15-2, Ex. A at 1.)  By February 2001 he came to be diagnosed with attention deficit/hyperactivity disorder (AD/HD) and oppositional defiant disorder (ODD), intermittent explosive disorder and selective mutism. (*Id.*)  Ultimately he came to be placed in a private alternative school (the "School") where he initially did well, but later engaged in a series of behaviors that resulted in a suspension.  (*Id.* at 2-3.)  Following a manifestation determination hearing where the District determined, over the dissent of Parents, that his conduct was not a manifestation of his disability, Parents initiated due process proceedings, at which the hearing officer

found in the District's favor. (*Id.* at 3-4.) On appeal, however, Pennsylvania's Special Education Appeals Panel unanimously reversed the hearing officer's decision with the entry of a January 10, 2007 determination that:

> The Student's code of conduct violation was a manifestation of his disability. The District shall not, without the Parents' consent, effectuate the recommended change in placement.

(*Id.* at 11.) Neither Parents nor the District sought further review of the Appeals Panel's decision.

On February 12, 2007, Parents' counsel forwarded to the District a Statement of Professional Services, seeking reimbursement of counsel fees and costs in the total amount of $12,785.64. (*See* Doc. No. 15-3, Ex. B at 5.) The District prepared and, it says sent, a response to this demand offering $8,532.51 in settlement of this claim. (*See* Doc. No. 16-2, Ex. A at 3.) Parents claim that they never received this or any response, thus "necessitating the filing of this action" on July 16, 2007. (Doc. No. 15-1, Memorandum at 2.)[1]

Parents filed this Motion for Counsel Fees and supporting Memorandum on January 24, 2008. (*See* Doc. No. 15.) Their motion attached an updated January 24, 2008 statement, which listed $16,464.47 in counsel fees and $1,276.30 in costs for which they sought reimbursement. (Doc. No. 15-4, Ex. C.) The January 24, 2008 statement also applied their counsel's 2008 rates to all of the time recorded. (*See id.*) The District thereafter filed a Response in Opposition on February 8, 2008, and Parents filed a Reply to the Response on February 15, 2008. (Doc. Nos. 16-17.) This motion is now fully briefed and ripe for decision.

In that Parents' complaint is limited to the question of the extent of counsel fees and costs

---

[1] We do not reach this disputed factual issue here as it is not necessary to our resolution of the issues presented.

to which they are entitled as prevailing parties, and as the parties have previously agreed and stipulated that "this matter can be decided on the basis of dispositive motions," resolution of the present motion will resolve this case in its entirety. (*See* Doc. No. 14.)

## I. DISCUSSION

### A. Applicable Standard

The IDEA provides a fee-shifting mechanism, whereby prevailing parents may recover their costs and fees:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability.

20 U.S.C. § 1415(i)(3)(B). As with other statutory fee-shifting provisions, the court is vested with discretion to determine the reasonable amount of fees and costs, if any, to award. *See A.S. ex rel. V.S. v. Colts Neck Bd. of Educ.*, No. 04-4749, 190 Fed. Appx. 140, 142-44 (3d Cir. June 30, 2006); *Maria C. ex rel. Camacho v. School Dist. of Phila.*, Nos. 04-2630 & 04-2756, 142 Fed. Appx. 78, 82-83 (3d Cir. May 23, 2005). This determination entails a multi-step evaluation, throughout which the petitioning party bears the burden of proof. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Interfaith Community Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005)*; Maldonado v. Houstoun*, 256 F.3d 181, 184-85 (3d Cir. 2001); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

First, the party seeking fees and costs must demonstrate that it is indeed the prevailing party in the underlying litigation. A party is deemed to be a prevailing party when it "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit."

*J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (*quoting Hensley*, 461 U.S. at 433)).

Second, once it has demonstrated that it is the prevailing party, the party seeking fees must demonstrate that its fee request is reasonable. *See Rode*, 892 F.2d at 1183. To do so, it must present documentation to establish that the hours expended and rates sought are reasonable. *See id.* The party opposing the fee award then has the burden to raise specific objections to any challenged portions of the petition. *See id.*; *see also Interfaith Community Org.,* 426 F.3d at 703 n.5. Once the opposing party has raised its objections, the court has wide discretion to adjust the fees requested based on the objections asserted. *See Rode*, 892 F.2d at 1183. The court may not, however, reduce a fee award based upon factors not articulated and argued by the party opposing the award. *See id.*

As with other statutory fee-shifting provisions, the award of fees under the IDEA is determined by the lodestar method, which is simply a multiplication of the number of hours reasonably expended by a reasonable hourly market rate. *See Rode*, 892 F.2d at 1183. The court must first determine the number of hours reasonably expended on the matter. *See id.* In reaching that number, the court should exclude excessive, redundant, or otherwise unnecessary hours. *See id.* It may also exclude hours that are not sufficiently documented, as well as hours spent litigating any unsuccessful claims. *See id.*

The court must then determine the reasonable hourly rate to be applied. *See id.* The hourly rate is to be calculated according to prevailing market rates in the relevant community. *See id.*; *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The rate should take into account prevailing counsel's skill and experience, the nature and complexity of the matter at issue, and should be evaluated with reference to the rates charged by comparable practitioners in the community. *See Rode*, 892 F.2d

at 1183; *Student Pub. Interest Research Gp. of N.J. v.* AT&T Bell Labs., 842 F.2d 1436, 1447-49 (3d Cir. 1988).

      **B.**    **Hours**

Parents submit that their counsel have reasonably expended 69 hours of time on this matter.[2] They have broken down their time as follows:

| Timekeeper | Hours Charged |
|---|---|
| Dennis McAndrews | 7.88 |
| Gabrielle Sereni | 7.88 |
| Heidi Konkler-Goldsmith | 25.38 |
| David Painter | 2.0 |
| Sarah Davis | 15.13 |
| Senior Paralegal | 6.75 |
| Junior Paralegal | 4.0 |

In evaluating the reasonableness of these hours charged, we have found, with some exception, the supporting documentation to be sufficient, and the hours charged to be reasonable. We address in turn each of the District's objections to the reasonableness of the hours claimed to have been expended.

The District first argues in a footnote that the time expended by David Painter, Ph.D., J.D.

---

[2] The District summarized the hours expended by Parents' counsel by timekeeper, and we accept that summary as accurate insofar as Parents did not prepare a competing summary or object to the accuracy of the District's summary. However, we do note that the District's summary appears not to include .29 hours of time reflected on the January 24, 2008 billing statement upon which Parents rely. To account for the discrepancy, in calculating the lodestar we will credit Parents with ¼ hour of time to Attorney Konkler-Goldsmith, the primary billing timekeeper.

was unnecessary. (*See* Doc. No. 16-1 at 10 n.3.) Attorney Painter spent two hours on "[r]eview of file materials" and "[p]reparation of file evaluation" on November 22, 2006, a date which was between the two sessions of the due process hearing. (*See* Doc. No. 15-4, Ex. C at 2.) The record establishes that Attorney Painter is both an attorney and an experienced school psychologist. (*See* Doc. No. 15-11 at Ex. J.) Given the complexity of addressing Ryan's emotional disabilities and the question of the effect these disabilities had upon his behavior, we do not consider it unreasonable that Attorney Painter would have been consulted and asked to review and analyze this case in the course of assisting in the preparation for the second session of the due process hearing. We decline the invitation to exclude his billing entries.

The District next argues that several time entries identified as "review of file materials," "reviewing status," or "interoffice conferences" are insufficiently specific to be taxed against it. (*See* Doc. No. 16-1 at 13.) The challenged hours include: .13 hours of junior paralegal time; .38 hours of paralegal time; .13 hours by Attorney Konkler-Goldsmith; 1.38 hours by Attorney Sereni; and .38 hours by Attorney McAndrews. The Third Circuit has instructed that:

> [A] fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates. However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.

*Rode*, 892 F.2d at 1190 (citation omitted). The entries challenged here fail to provide the "fairly definite information as to the hours devoted to various general activities" required by the Third Circuit. For example, the entries provide no information concerning even the general litigation activity (*e.g.*, discovery, hearing preparation, counsel fees petition) being performed, and without

6

this basic information we are unable to evaluate the reasonableness of the hours expended. Accordingly, we will exclude these time entries from the lodestar calculation.

The District next challenges .5 hours of Attorney McAndrews' time and .13 hours of senior paralegal time as not related to this matter. (*See* Doc. No. 16 at 14.) As Parents do not dispute this objection, these time entries will not be included in the lodestar. (S*ee* Doc. No. 17-1 at 6 n.3.)

The District then objects to four time entries, dated October 30, 2006 through November 1, 2006 and totaling three-quarters of an hour, on the grounds that they pre-date a November 20, 2006 letter by Parents' counsel to the District in which counsel stated that they had only recently been contacted by Parents seeking representation. (*See* Doc. No. 16-1 at 14.) We do not find it unreasonable that counsel engaged in preliminary communications with their clients, before entering their appearance. We will therefore allow the pre-November 20, 2006 time entries.

The District next objects to a two-hour time entry by Attorney McAndrews dated November 30, 2007 for: "Closure of file (final telephone communications with clients and counsel, review of correspondence, preparation of correspondence, distribution of settlement proceeds, etc." (*See* Doc. No. 16-1 at 15.) The District argues that file closure is a non-taxable administrative task and also notes that the file was not closed as of the date of the entry, in that further time entries were made after that date. (*Id.*) The District also points out that the entry was dated February 28, 2007 in the February 12, 2007 billing statement submitted to it by Parents, which is of course some 16 days *after* the date of that bill. (*See id.*) In the January 28, 2008 billing statement, which is the basis for this claim, the precise entry again appears, but this time it is dated November 30, 2007. (*See id.*; *see also* Doc. No. 15-4, Ex. C at 8.) While some of the time expended in file closure may properly be administrative and non-taxable, this entry indicates that it includes attorney-client communications

concerning final disposition of this matter, which, if adequately demonstrated, would be taxable. However, "final" disposition is not further identified in the entry. It would not appear to be disposition of the underlying due process matter as that had occurred ten months earlier, and it would likewise not appear to be "final" disposition of the entire case as the fee petition question was still very much unresolved. In that it is insufficiently documented, we conclude that we cannot assess this entry against the District.

Finally, the District objects generally that the time expended in prosecuting this fee petition was excessive. (*See* Doc. No. 16-1 at 15.) It suggests that prosecuting the fee petition should only reasonably have taken ten hours of associate time, instead of the 20¼ hours Parents' counsel claim to actually have spent. (*See id.* at 4, 15.) The District, however, presents no specific basis of support for this objection, and our independent review of the relevant time entries does not give rise to a basis upon which to exclude them. They will therefore be included in the lodestar without reduction.

Based on the above adjustments, we find that Parents' counsel reasonably expended 64.25 hours on this matter[3], broken down by timekeeper as follows:

| Timekeeper | Hours Charged |
|---|---|
| Dennis McAndrews | 5.00 |
| Gabrielle Sereni | 6.50 |
| Heidi Konkler-Goldsmith | 25.50 |
| David Painter | 2.00 |
| Sarah Davis | 15.13 |
| Senior Paralegal | 6.25 |

---

[3]Our figures are rounded to the nearest ⅛ of an hour, in keeping with the increments in which Parents' counsel billed.

| Junior Paralegal | 3.88 |
|---|---|

### C. Fees

Having determined that Parents' counsel reasonably expended 64.25 hours on this matter, we must now determine the hourly rates for each timekeeper. Parents argue that the following rates should apply:

| **Timekeeper** | **Rate** |
|---|---|
| Dennis McAndrews | $375 / hour |
| Gabrielle Sereni | $270 / hour |
| Heidi Konkler Goldsmith | $270 / hour |
| David Painter | $270 / hour |
| Sarah Davis | $190 / hour |
| Senior Paralegal | $120 / hour |
| Junior Paralegal | $85 / hour |

The District does not dispute the rates claimed by Attorney Davis or the paralegals, and it disputes Attorney McAndrews' rate only to the extent that his 2008 rate, rather than 2007 rate is applied. (Doc. No. 16-1 at 8.) The District otherwise objects on two principal grounds to the rates claimed by Parents' counsel. First, it asserts the 2007, as opposed to the 2008, rates should be used. (*Id.*) Second, it asserts that the rates attributed to the senior associates are excessive. (*Id.* at 8-12.)

The Third Circuit has instructed that, when calculating the amount of attorneys' fees to be awarded under a fee-shifting statute, "the current market rate must be used." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) (*citing Rode*, 892 F.2d at 1183). It has defined the current market rate in this context to be "the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni*, 259 F.3d at 149-50 ("A current market rate is exactly that -- a reasonable

9

rate based on the currently prevailing rates in the community for comparable legal services."). The court observed that the use of the current market rate compensates the prevailing party for any delay in reimbursement. *See id.* at 149-50; *see also Rode*, 892 F.2d at 1184 & 1188-89. As the court further observed, this approach can promote ease of application by eliminating the need to determine rates over time and then make a delay damages calculation. *See Lanni*, 259 F.3d at 149-50 (rejecting the district court's calculation of fees "on a graduated scale, varying according to the time period during which the services were performed"); *see also Rode*, 892 F.2d at 1188-89.

While both parties agree that *Lanni* is applicable to the present matter and that it dictates that fees be calculated based on the market rate at the time the fee petition is filed, they disagree as to what constitutes the "fee petition." (*See* Doc. No. 15-1 at 4; Doc. No. 16-1 at 8; Doc. No. 17-1 at 2-3.) Parents argue that the "fee petition" here is their Motion for Counsel Fees, which was filed in January 2008, entitling them to apply the 2008 rates. The District argues that the "fee petition" is the underlying Complaint, filed in July 2007, in that it is limited to seeking counsel fees and costs only.

We accept Parents' argument here as we believe that it is consistent with the reasoning underlying the *Lanni* decision. The purpose of the *Lanni* rule, as we understand it, is to afford the prevailing party reasonable delay compensation and to promote simplicity and ease of calculation. Both purposes are served by deeming Parents' Motion for Counsel Fees to be the "fee petition" in the present case. We conclude here that the use of 2008 rates provides Parents reasonable compensation for any delay in payment as the increase in rates (about four percent per year on

average) is reasonably related to the time value of money.[4] It also eliminates the need for any interest calculation.

The District also objects to the rates claimed by senior associates Gabrielle Sereni, Heidi Konkler-Goldsmith, and David Painter. (*See* Doc. No. 16-1 at 8-12.) Parents have claimed an hourly rate of $270 for each of them. The District argues that these rates should be fixed at no more than $210, $220, and $190 per hour respectively. (*Id.* at 9-10.) The District relies primarily on the fact that the Community Legal Services ("CLS") Attorney's Fees – Schedule of Hourly Rates, effective April 1, 2006, prescribes lower hourly rates for attorneys with similar years of experience than those claimed for the three lawyers. (*Id.* at 8-11.) Parents counter that the rates claimed are reasonable in light of each associate's education and experience and that they have presented sufficient evidence to substantiate the reasonableness of such fees. (*See* Doc. No. 15-1 at 4-7.)

With one exception, we agree with Parents. While certainly worthy of our consideration, the CLS rates are only generalized guidelines and as such do not account for the specialized skills and experience possessed by these lawyers in the field of special education law. *See, e.g.*, *Evans v. Philadelphia Housing Auth.*, Civ. A. No. 93-5547, 1995 WL 154872, *2-4 (E.D. Pa. Mar. 31, 1995) (noting that CLS rates are based solely on the number of years a lawyer has been in practice and do not consider the lawyer's area of practice or specialization, if any). Moreover, as Parents note, the

---

[4]We can envision circumstances where dramatic increases in counsel's claimed rate from one year to the next could smack of mischief and give us pause in allowing the "current" rate to be used in lieu of some other method of calculating delay compensation. However, counsel's annual rate increases are reasonable in this instance. For example, Attorney McAndrews' hourly rate increased from $350 in 2006 to $360 in 2007 and $375 in 2008, *i.e.*, annual increases of 2.9% and 4.2% respectively. The hourly rates for the firm's senior associates similarly increased from $250 in 2006 to $260 in 2007 and $270 in 2008, *i.e.*, annual increases of 4% and 3.8% respectively.

guidelines themselves are now nearly two years out-of-date.

Parents submitted curricula vitae for Attorneys Sereni and Painter, together with affidavits by three other special education specialist attorneys practicing in the region that attested to the reasonableness of counsel's rates. These submissions establish that both attorneys have specialized experience and expertise in the field of special education law, as well as relevant specialized non-legal education credentials and experience. Attorney Sereni has practiced special education law for more than eight years, has a masters degree in education, and has previously worked as teacher. Attorney Painter has practiced special education law for four years, has a Ph.D. in psychology, and twenty-six years of experience as a school psychologist. (*See* Doc. Nos. 15-10 & 15-11 at Exs. I & J.)[5]

Attorney Konkler-Goldsmith has similarly specialized experience and expertise in the field, having practiced special education law for more than eight years. She does not, however, have similar additional education credentials as do Attorneys Sereni and Painter. Accordingly, we find that a more appropriate rate for her time would be $250.

With this sole exception then, we find that Parents' counsel's 2008 rates are the appropriate "current" rates to apply in calculating the lodestar, and we find that Parents have sufficiently substantiated the individual 2008 rates claimed.

---

[5]Attorney McAndrews also submitted an affidavit in support of the Motion for Counsel Fees, in which he verified the factual statements made in the Motion and supporting Memorandum and averred that the rates claimed by his firm were reasonable and comparable to the rates charged by other special education law firms in the region. The District objected to the competency of Attorney McAndrews to present such evidence in support of a claim for fees by his firm. While we recognize the inherent bias in counsel attesting to the reasonableness of his own rates, we do not need to reach that question in this instance in that Parents have submitted sufficient additional evidence of the reasonableness of their counsel's fees.

### D. Calculation of Lodestar

Based on our determination of the number of hours reasonably expended by Parents' counsel on this matter and counsel's reasonable current market rates, the applicable lodestar figure is $14,499.50. That number is calculated as follows:

| Timekeeper | Reasonable Hours | Reasonable Rate | Total |
| --- | --- | --- | --- |
| Dennis McAndrews | 5.00 | $375 | $1875 |
| Gabrielle Sereni | 6.50 | $270 | $1755 |
| Heidi Konkler-Goldsmith | 25.50 | $250 | $6375 |
| David Painter | 2.0 | $270 | $540 |
| Sarah Davis | 15.13 | $190 | $2874.70 |
| Senior Paralegal | 6.25 | $120 | $750.00 |
| Junior Paralegal | 3.88 | $85 | $329.80 |

### E. Adjustments to the Lodestar

Having calculated the lodestar amount, we must now determine whether any adjustments to it are required. The District contends that the lodestar should be reduced because Parents did not prevail before the hearing officer, but rather prevailed only upon the administrative appeal. It offers no support for this theory. The District does not dispute that Parents prevailed on all issues. The fact that the hearing officer initially ruled in the District's favor does not support a reduction for that time. Indeed, it was from the record of that ruling that Parents brought the appeal which ultimately prevailed. We do not accept the District's argument.

The District also contends that the lodestar should be reduced such that Parents would not recover more than the amount the District offered them in settlement before this litigation

13

commenced.  (*See* Doc. No. 16-1 at 16.)  We find this argument similarly unpersuasive.

To the extent that the District seeks to rely upon the offer of judgment procedure, either embodied in Rule 68 of the Federal Rules of Civil Procedure or under the IDEA at 34 C.F.R. §300.517(c)(2), it did not comply with the procedural prerequisites sufficient to put Parents on notice that an offer of judgment was being made that Parents would reject at their own peril.  It is clear to us that the District was simply making a settlement offer and was not making an offer of judgment.  Indeed, in the letter by which the offer was conveyed, the District stated:

> This letter is evidence of compromise negotiations and, as such, is not admissible in court, pursuant to Rule 408 of the Federal Rules of Evidence and Rule 408 of the Pennsylvania Rules of Evidence.  This offer is withdrawn if and when litigation is filed for attorneys' fees.

(Doc. No. 16-2 at Ex. A (attaching a copy of the District's settlement offer letter).)  The District's settlement offer was therefore not intended to be an offer of judgment and cannot now be treated as one.

### F.   Costs

In their Motion, Parents also seek to recover costs in the amount of $1276.30.  This part of the Motion is broken down as follows:

| 11/22/2006 | Parking | $10 |
|---|---|---|
| 12/15/2006 | Nancy R. Bloomfield, Ph.D. – Due Process Hearing | $900 |
| 12/22/2006 | Federal Express | $16.30 |
| 7/9/2007 | Complaint filing fee | $350 |

The District in its brief conceded that Parents are entitled to recover the Complaint filing fee of $350. Parents in their Reply agreed not to press their request for Federal Express charges. Parents also correctly point out that nothing in the IDEA precludes recovery of parking costs. We will allow them this charge.

Parents' request to recover witness fees for the attendance of their expert witness, Dr. Nancy Bloomfield, at the due process hearing, however, cannot be granted. While the question of whether the IDEA authorized a prevailing party to recover expert witness long remained an open question, the Supreme Court has recently resolved the issue and determined that the IDEA does not authorize this recovery. *See Arlington Central School District Bd. of Educ. v. Murphy*, 548 U.S. 291, 126 S. Ct. 2455, 2460 & 2463-64 (2006).

The Court held that "the text of 20 U.S.C. § 1415(i)(3)(B) does not authorize an award of any additional expert fees" beyond the travel expenses and $40 per diem authorized by 28 U.S.C. §§ 1920 and 1821. *Id.* at 2460. The Court moreover expressly rejected the argument that the legislative history of the IDEA suggested that Congress intended expert witness fees to be recoverable in actions brought under the Act. *Id.* at 2463. Rather, it held: "Whatever weight this legislative history would merit in another context, it is not sufficient here. Putting the legislative history aside, we see virtually no support for respondents' position. Under these circumstances, where everything other than the legislative history overwhelming[ly] suggests that expert fees may not be recovered, the legislative history is simply not enough." *Id.*

While Parents do not address the Supreme Court's *Arlington Central School District* decision in their briefing, they do argue that the Court's earlier holding in *Schaffer v. Weast*, 546 U.S. 49, 60-61, 126 S. Ct. 528, 536 (2005) that "a parent has a right to an Independent Educational Evaluation

15

at public expense" compels the conclusion that expert witness fees are taxable under the IDEA. (Doc. No. 17 at 10.) In light of the Court's later *Arlington Central School District* opinion, however, which speaks directly to the issue, we find Parents' argument unpersuasive.

Parents further argue for the first time in their Reply that they should be able to recover Dr. Bloomfield's expert fees pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Doc. No. 17 at 9-10.) They correctly note that Section 504 incorporates the remedies available under the Civil Rights Act of 1964, which specifically provides for the taxation of expert witness fees at 42 U.S.C. § 2000e-5(k) ("the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs"). However, in our review of Parents' pleadings, we find that they sought relief only under the IDEA. (*See* Doc. No. 1; *see also* Doc. Nos. 15, 17.) We are therefore constrained to determine Parents' entitlement to expert witness fees solely under the IDEA. *See Irving Independent School Dist. v. Tatro*, 468 U.S. 883, 895-96, 104 S. Ct. 3371, 3378 (1984) (holding that a plaintiff who prevails and obtains relief under the predecessor to the IDEA was not entitled to further relief under the Rehabilitation Act and reversing decisions of lower courts granting counsel fees under the Rehabilitation Act to such prevailing party). As the Supreme Court has conclusively held that expert witness fees may not be recovered under the IDEA, we are unable to accept taxation of Dr. Bloomfield's fees to the District here, beyond the $40 per diem authorized by 29 U.S.C. § 1821. Parents may therefore recover costs, in addition to counsel fees, in a total amount of $400, $350 in court filing fees, $10 in parking costs and $40 in witness fees.

## II. CONCLUSION

For the reasons discussed above and further to the parties' stipulation that this matter be decided upon dispositive motions and pursuant to 20 U.S.C. §1415(i)(3)(B)(i), we award to Parents counsel fees in the amount of $14,499.50 and costs in the amount of $400, for a total award of $14,899.50.

An appropriate Order follows.